Bob YOUNG, et al.,
Plaintiffs/Respondents,

v.

KOLKMEIER DEVELOPMENT, INC., Defendant/Appellant.

No. 65915.

Missouri Court of Appeals,
Eastern District,
Division Three.

May 9, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 12, 1995.

Application to Transfer Denied
July 25, 1995.

---

Daniel J. Harlan, St. Louis, for appellant.

Claude C. Knight, St. Charles, for respondents.

CRANDALL, Judge.

This appeal involves an action for damages for permanent nuisance. Defendant, Kolkmeier Development, Inc., appeals from the judgment of the trial court in favor of plaintiffs, Young et al., after a jury trial, in the amount of $93,000.

The evidence, viewed in the light most favorable to the verdict, reveals that seventeen plaintiffs brought an action against defendant for damages to a lake in which they shared a common interest. The original plaintiffs owned the ten lots surrounding the lake.

In the fall of 1985, defendant began to develop a subdivision upstream from the plaintiffs' lake. In the course of its development, defendant failed to maintain barriers, restraints or siltation ponds, and diverted water and silt into the plaintiffs' lake. Expert testimony at trial was that the lake had silted in and, by the spring of 1988, had diminished in value by $250,000.

Plaintiffs' lots were subject to a certain deed of restrictions, which stated, in pertinent part:

That it is contemplated that each of the above lots will be sold to different individuals, and it is the intention of the undersigned to establish joint rights to maintain and use a lake area which comprises a portion of each of these lots.

That the lake with an earthen dam constitutes a "common use area" and the undersigned hereby create and establish an easement and right of use for the joint benefits and obligations of the present and future owners, their heirs, successors and assigns, said easement to be over, through and under the lake portion of the above described lots.

The precise boundary of the easement for common use shall be the water level of the lake, and shall be generally as set forth on the Plat described above.

There shall be an Association of the lot owners from Lots 23, 24, 25, 34, 35, 36, 41, 78, 79 and 80, each of whom shall pay annual assessments to a common fund established by the board of Trustees of the Lake Lots Section of The Bluff's subdivision to maintain the common lake and dam area.

That in addition to the general subdivision assessment as set forth in Part B of these Restrictions, there shall be an assessment for each lake lot which shall not exceed $100.00 per year, unless an emergency situation should arise. The determination of the emergency assessment shall be made by a majority of lake lot owners after appropriate written notice and hearing. These assessments are not to be co-mingled with other Subdivision funds, and are to be used exclusively for maintenance and improvement of the common area lake and dam..(sic) The levies shall be equal on each of these lake lots and shall become liens on said lots until paid.

During the pendency of the action, nine of the original seventeen plaintiffs sold their property. As these owners transferred their interest in the property, the plaintiffs filed motions to substitute the new owners as party plaintiffs. *See* Rule 52.13(c). The trial court granted the motions, over defendant's objection.

The jury returned a verdict in favor of the seventeen plaintiffs for $93,000 and judgment was entered accordingly.

The salient point on appeal is whether the trial court erred in permitting the substituted plaintiffs to maintain an action for damages for permanent nuisance. Defendant argues that a subsequent purchaser cannot maintain such an action for damages.

If a nuisance is permanent, there is but one cause of action and a subsequent purchaser cannot maintain an action. *Spain v. City of Cape Girardeau*, 484 S.W.2d 498, 503 (Mo.App.1972). But if the nuisance is "temporary," a subsequent purchaser has a claim for damages occurring after the purchase. *Id.* Thus, it is clear that the purchasers in this case, who acquired their interest subsequent to the damage done to the lake, would have been unable to *initiate* an action against defendant for permanent nuisance.[1]

When this action was originally filed, the plaintiffs named in the petition were all lake lot owners at the time the damage to the lake occurred. According to the deed of restrictions, each of these original plaintiffs jointly owned the lake. As such, they were the proper parties to bring the action. Rule 52.13(c) provides:

> **Transfer of Interest.** In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party. Service of the motion shall be made as provided in subsection (a) of this Rule.

Under Rule 52.13(c), the original plaintiffs could have continued this action.

When six of the lake lots were sold during the pendency of the action, the original lake lot owners transferred their interests to the new owners.[2] Thus, the subsequent plaintiffs did not initiate an action against defendant. As a result of the transfer, the new lot owners stood in the shoes of some of the original plaintiffs and were properly substituted by motion. Rule 52.13(c) simply provided the procedural method to effectuate the transfer. Defendant's point is denied.

In view of our holding, we need not address defendant's remaining points on appeal.

The judgment of the trial court is affirmed.

CRANE, P.J., and DOWD, J., concur.

---

1. It is not contested that plaintiffs' damages, if any, are for permanent, rather than temporary, nuisance.

2. The test to determine whether a cause of action is transferrable is whether it would survive to a personal representative. *Beall v. Farmers' Exchange Bank of Gallatin*, 76 S.W.2d 1098, 1099 (Mo.1934). Actions for damages to property survive to the personal representative. § 537.010 (RSMo 1994).